IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION



UNITED STATES OF AMERICA

v.

CRIMINAL NO. 3.25cr110 DCB-LGI

REBECCA IVISON

31 U.S.C. § 5324(a)(1)
18 U.S.C. § 1001(a)(3)
42 U.S.C. § 1490s(a)(1)
18 U.S.C. § 641
18 U.S.C. § 1956(a)(1)(B)(ii)
18 U.S.C. § 1957
18 U.S.C. § 658

**The Grand Jury charges:**

At all times relevant to this Indictment:

### INTRODUCTION

*Background on Regulation of Currency Transactions*

1. The Internal Revenue Service (IRS) was an agency of the United States Department of the Treasury. The Financial Crimes Enforcement Network (FinCEN) was a bureau within the United States Department of the Treasury.

2. Title 31, United States Code, Section 5313 and the regulations promulgated thereunder require any financial institution that engages in a currency transaction (*e.g.*, a deposit or withdrawal) in excess of $10,000 with a customer to report the transaction to the Department of the Treasury by filing a Currency Transaction Report (CTR). These regulations also require that multiple transactions be treated as a single transaction if the financial institution has knowledge that they are by, or on behalf of, the same person, and they result in either currency received or disbursed by the financial institution totaling more than $10,000 during any one business day.

3. CTRs are often used by law enforcement to uncover a wide variety of illegal activities such as money laundering. Many individuals engaged in such illegal activities are aware of such reporting requirements and take active steps to cause financial institutions to fail to file CTRs, such as, for example, making multiple cash deposits in amounts not more than $10,000 on the same day or consecutive days. These active steps are often referred to as "structuring." Structuring cash transactions to avoid triggering the filing of a CTR by a financial institution is prohibited by Title 31, United States Code, Section 5324(a).

4. Title 31, United States Code, Section 5331 and Title 31, Code of Federal Regulations, Section 1010.330 required any person involved in a trade or business to file a form, known as Form 8300, with FinCEN, with respect to any cash transaction in which the person receives more than $10,000 in United States Currency.

5. The IRS and FinCEN were responsible for collecting and maintaining reports of persons which received cash payments in excess of $10,000. All persons who, in the course of their business, received more than $10,000 cash in a single transaction or two or more related transactions during a twelve-month period must file with the IRS and FinCEN a Form 8300 within fifteen days of receiving the cash. "Persons" included an individual, corporation, partnership, trust, estate, association, or company. Sales transactions cannot be divided into multiple transactions in order to avoid a reporting requirement. The recipient of the cash must verify and report the identity of the person from whom the cash is received, along with other pertinent information.

### *Background on Relevant Individuals and Entities*

6. Rural Development (RD) is an agency of the USDA. RD is committed to helping improve the economy and quality of life in all of rural America by providing assistance in the form of financial programs to support essential public facilities and services such as water systems,

sewer systems, housing, health clinics, emergency public facilities, electric utilities, and telephone utilities.

7.      Rural Housing Service (RHS) is a credit agency within USDA-RD which, through its Multi-Family Housing (MFH) Program, provides affordable multi-family rental housing in rural areas by financing projects geared for low-income, elderly, and disabled individuals and families, as well as domestic farm laborers. Prior to being transferred to USDA-RD, RHS loans were serviced through the Farmers Home Administration (FmHA) which is a former Federal agency.

8.      Section 515 Rural Rental Housing (RRH) loans are offered by RHS under the MFH program. The RRH loan recipient is known as the "borrower." This is a direct loan program wherein RD provides financing to support the development of rental units in rural areas for low- and moderate-income individuals and families in eligible rural areas and towns. RD holds a security interest in any such buildings and/or land financed with a RRH loan, as well as all income derived from the operation of such assets during the life of the loan. Types of income generated by affordable housing, such as an apartment complex, financed by a RRH loan include rent, payments, government subsidy payments, and indemnity payments from insurance companies.

9.      RD subsidizes RRH loans by providing rental assistance to the borrower on behalf of the tenant on certain loans. Tenant rents are capped as a percentage of tenant income. The amount of rent above and beyond that cap is subsidized by USDA-RD. Rent amounts are determined based upon both the average rent amounts for the area and the cost of the loans obtained for the purchase or renovation of the project. RD also subsidizes borrowers' mortgages by paying a percentage of the loan interest on certain loans.

3

10. RRH loans assist qualified applicants that cannot obtain commercial credit on terms that will allow them to charge rents that are affordable to low-income tenants. Qualified applicants include individuals, trusts, partnerships, limited partnerships, non-profit organizations, federally recognized tribes, and most state and local government entities. Funds may be used to buy and improve land, provide necessary infrastructure, and to provide necessary facilities such as water and waste disposal systems. The regulations and policies that govern the MFH Program are 7 Code of Federal Regulations (CFR) Part 3560, Title V of the Housing Act of 1949, and RD Handbooks HB-1-3560, HB-2-3560, and HB-3-3560.

11. Generally, RD requires and files applicable loan document forms to include a Loan Agreement, Promissory Note, Real Estate Deed of Trust, Assumption Agreement, etc., for each RRH approved loan.

12. The borrower is responsible for providing management for the property and must ensure that property operations comply with the terms of all loan documents and RD requirements. For each RRH financed MFH project, the borrower must develop and maintain a management plan and execute a management certification each time the borrower proposes a management agent, and a management agreement is executed. The borrower and management agent must attest they both agree to operate the housing project in accordance with the management plan and agree both will comply with the RD handbooks, notices, directives, agency requirements, and contract obligations, etc.

13. Under RD rules, a borrower and management agent are prohibited from purchasing goods or services from entities that have an Identity of Interest (IOI) relationship with the borrower or management agent until the relationship has been disclosed to RD and not denied. An IOI relationship is a relationship between applicants, borrowers, grantees, management agents, or

4

suppliers of materials or services including, but not limited to, where there is a financial interest between the applicant, borrower, grantee, and a management agent or the supplying entity.

14. RD reserves the right to suspend or debar the borrower, the management agent, or other firms or employees found to have an IOI relationship if they are not disclosed.

15. The borrower must establish and maintain financial accounts for each project as required by the loan agreement. At a minimum, the following accounts must be established: (1) General Operating account used to handle all revenues and expenses associated with project operations; (2) Taxes and Insurance account to pay taxes and insurance; (3) Security Deposit account to hold security deposit funds; and (4) a Reserve account.

16. Borrowers will often form a management company or companies in order to manage their own RRH financed property or properties.

17. Management companies, such that **REBECCA IVISON (IVISON)** managed (i.e., Complex Management, Inc, Delta Property Management, Inc, And Southern Management Group, LLC) can act as the agent for the borrower(s). Once the management company is hired by the borrower, the management company is responsible for complying with all applicable rules and regulations of the RRH loan program. The rules and regulations are outlined in the management certification. The management certification is between RD, the management company, and the borrower(s). The management company is required to prepare and submit an annual budget to RD for approval. The annual budget outlines how the income generated by the RRH financed apartment complex can be used. An approved usage of generated income is management fees. Management fees are funds which the management company receives from the bank account of RRH financed apartment complexes as payment for overseeing the day-to-day operations of the

apartment complexes. Management fees are the only funds a management company can withdraw from the bank accounts of the RRH financed apartment complexes and use at its discretion.

18. The late Herbert Ivison, Jr. executed multiple fifty-year mortgages with USDA-RD (formerly FmHA) for various RRH financed MFH apartment complexes throughout the state of Mississippi. Herbert Ivison, Jr. also managed various RRH financed apartment complexes throughout the state of Mississippi in which he was not the borrower. Herbert Ivison, Jr. conducted business under various names, including but not limited to, Complex Management, Inc (CMI), Delta Property Management, Inc (DPM), And Southern Management Group, LLC (SMG).

19. On July 13, 2012, Wicker Garden Designs, LLC filed a Mississippi LLC Certificate of Formation with the Mississippi Secretary of State office. In a 2013 Mississippi Secretary of State Limited Liability Company Annual Report, Wicker Garden Designs, LLC listed "Rivison," P.O. Box 16152, Jackson, MS 39236 as the contact member.

20. On December 20, 2014, Wicker Garden Designs, LLC was administratively dissolved.

21. Herbert Ivison, Jr. died on November 21, 2014. After Herbert Ivison, Jr.'s death, his son assumed operation of his businesses.

22. On June 20, 2017, the Scott County, MS Chancery Court awarded Herbert Ivison, Jr.'s widow, **IVISON**, day to day operation of CMI and all other businesses owned or managed by the Estate of Herbert Ivison, Jr., to include DPM; SMG; CMI; Complex People Leasing, LLC; and Tri-Plex, Inc. The Estate of Herbert Ivison, Jr. is the borrower and/or management agent for multiple properties financed by RRH loans throughout the state of Mississippi. **IVISON** assumed operation of CMI and all other businesses owned or managed by the Estate of Herbert Ivison, Jr. on June 20, 2017.

23. The defendant, **REBECCA IVISON**, was a resident of Hinds County, Mississippi.

24. Unindicted Co-Conspirator A was a resident of Dallas, Texas.

25. On December 15, 2017, Wicker Garden Designs, LLC filed an Application for Reinstatement Following an Administrative Dissolution with the Mississippi Secretary of State's Office. The application was filed by "R. Ivison." Annual reports for 2014 to 2017 were filed for Wicker Garden Designs, LLC to be reinstated. The principal address listed for Wicker Garden Designs, LLC was **IVISON'S** home address.

26. On December 18, 2017, **IVISON** opened a Wicker Garden Designs, LLC business checking account at Regions Bank. **IVISON** listed her home address and business federal tax ID# 46-0613611 on the application.

27. Also on December 18, 2017, **IVISON** deposited $19,400.00 into the Wicker Garden Designs, LLC business checking account. $18,900.00 of the deposit came from various RRH financed properties under the control of **IVISON**. In the month of December 2017, **IVISON** deposited $79,975.00 into the Wicker Garden Designs, LLC business checking account from various RRH financed properties. All the checks were made payable to WGD, LLC.

28. On December 18, 2017, Unindicted Co-Conspirator A deposited $11,666.50 into his First Commercial Bank checking account that he shared with **IVISON**. $11,400 of the $11,666.50 deposit came from various RRH financed properties. The $11,400 was from payments made for pressure washing RRH financed properties. On December 19, 2017, **IVISON** wired $11,000 in two separate transactions of $9,900 and $1,100 from the joint account to her personal checking account.

29. The IOI relationship between **IVISON** and Unindicted Co-Conspirator A should have been approved by RD prior to **IVISON** paying her son, since **IVISON** received $11,000 of

7

the first $11,400 that her son received from various RRH properties. However, **IVISON** did not disclose the IOI relationship.

30.     From December 18, 2017, through December 28, 2017, her son was paid approximately $33,600.00 for pressure washing RRH financed properties.

31.     On December 26, 2017, **IVISON's** son purchased a 2016 Land Rover Range Rover HSE from Ritchey Automotive in Jackson, MS for $94,851.25. The vehicle was purchased in full with two separate checks. **IVISON's** son wrote a personal check for $20,000.00. **IVISON** wrote a check from the Wicker Garden Designs, LLC account for $74,851.25.

32.     In December 2017, Wicker Garden Designs, LLC (WGD) received approximately $79,975.00 from various USDA, RD financed properties.

33.     In 2018, WGD received approximately $289,321.95 from various USDA, RD financed properties.

34.     Between 2017 and 2019, WGD received approximately $556,604.66 from various USDA, RD financed properties.

35.     The IOI relationship between **IVISON** and WGD should have also been approved by RD prior to **IVISON** paying WGD. However, **IVISON** did not disclose the IOI relationship with WGD.

COUNT 1

36.     The allegations contained in paragraphs 1 through 35 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

37.     On or about December 19, 2017, in Hinds County, in the Northern Division of the Southern District of Mississippi and elsewhere, the defendant, **REBECCA IVISON**, aided and abetted by others known and unknown to the Grand Jury, knowingly and for the purpose of evading

the reporting requirements of Title 31, United States Code, Section 5313(a), and the regulations promulgated thereunder, did cause and attempt to cause a domestic financial institution to fail to file a report required under Title 31, United States Code, Section 5313(a), and any regulation prescribed under any such section.

| COUNT | TRANSACTIONS | AMOUNT |
|---|---|---|
| 1 | Internet transfer from the joint checking account of **REBECCA IVISON** and Unindicted Co-Conspirator A to the personal checking account of **REBECCA IVISON** ending in 0338 | $9,900.00 |
|  | Internet transfer from the joint checking account of **REBECCA IVISON** and Unindicted Co-Conspirator A to the personal checking account of **REBECCA IVISON** ending in 0338 | $1,100.00 |

All in violation of Title 31, United States Code, Sections 5324(a)(1) and 5324(d); Title 18, United States Code, Section 2; and Title 31, Code of Federal Regulations, Part 103.

COUNT 2

38.  The allegations contained in paragraphs 1 through 37 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

39.  On or about July 1, 2017, in Hinds County, in the Northern Division of the Southern District of Mississippi and elsewhere, the defendant, **REBECCA IVISON**, aided and abetted by others known and unknown to the Grand Jury, did willfully and knowingly make a false writing and document, to wit: an Identity of Interest Qualification Certificate for Pachuta Apartments Ltd., knowing the same to contain a materially false, fictitious, and fraudulent statement and entry in a matter within the jurisdiction of the United States Department of Agriculture, an agency within the executive branch of the Government of the United States. **REBECCA IVISON** certified that only the individuals and companies listed on Form RD 3560-31 have an identity of interest with the Agent, **REBECCA IVISON**. The statements and representations were false because, as

**REBECCA IVISON** then and there knew, she did not disclose an Identity of Interest relationship with her company, Wicker Garden Designs, LLC, to the United States Department of Agriculture.

All in violation of Title 18, United States Code, Sections 1001(a)(3) and 2.

## COUNT 3

40.   The allegations contained in paragraphs 1 through 39 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

41.   Between in or about December 2017, through in or about May 2019, in Hinds County, in the Northern Division of the Southern District of Mississippi and elsewhere, the defendant, **REBECCA IVISON**, as an owner, agent, employee, or manager in custody, control or possession of Pachuta Apartments Ltd., which is and, at the time was, property securing a loan under Section 1485 of Title 42, willfully used part of the rents, assets, proceeds, income or other funds derived from the property, for a purpose other than to meet actual and necessary expenses of the property, and not authorized by subchapter III, Farm Housing, Section 1471 through 1940t, and the applicable regulations.

All in violation of Title 42, United States Code, Section 1490s(a)(1).

## COUNT 4

42.   The allegations contained in paragraphs 1 through 41 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

43.   Between in or about December 2017, through in or about September 2019, in Hinds County, in the Northern Division of the Southern District of Mississippi and elsewhere, the defendant, **REBECCA IVISON**, aided and abetted by others known and unknown to the Grand Jury, willfully and knowingly did embezzle, steal, purloin and knowingly convert to her own use or the use of another, and willfully and knowingly did receive, conceal and retain stolen property

of the United States, that is, greater than $1,000.00 in funds belonging to the United States of America, by converting United States Department of Agriculture Rural Rental Housing funds to her own use, to which she knew she was not entitled.

All in violation of Title 18, United States Code, Sections 641 and 2.

## COUNT 5

44. The allegations contained in paragraphs 1 through 43 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

45. On or about December 19, 2017, in Hinds County, in the Northern Division of the Southern District of Mississippi and elsewhere, **REBECCA IVISON**, aided and abetted by others known and unknown to the Grand Jury, did knowingly conduct a financial transaction affecting interstate commerce, to wit: the transfer of funds from a joint account to a personal account, which involved the proceeds of a specified unlawful activity, that is theft of government funds in violation of Title 18, United States Code, Section 641, knowing the transaction was designed, in whole or in part, to avoid a transaction reporting requirement under state or federal law, and that while conducting and attempting to conduct such financial transactions knew that the funds involved in the financial transactions represented the proceeds of some form of unlawful activity, that is theft of government funds.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(ii) and 2.

## COUNT 6

46. The allegations contained in paragraphs 1 through 45 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

47. On or about December 26, 2017, in Hinds County, in the Northern Division of the Southern District of Mississippi and elsewhere, the defendant, **REBECCA IVISON**, aided and

abetted by others known and unknown to the grand jury, did knowingly engage in a monetary transaction in criminally derived property of a value greater than $10,000, and which in fact was derived from specified unlawful activity, namely, the defendant paid the sum of $74,851.25 in currency to Ritchey Automotive in Jackson, Mississippi, towards the purchase of a 2016 Land Rover Range Rover HSE automobile, which funds in fact were derived from the theft of government money.

All in violation of Title 18, United States Code, Sections 1957 and 2.

## COUNT 7

48. The allegations contained in paragraphs 1 through 47 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

49. In or about December 2017, through in or about September 2019, in Hinds County in the Northern Division of the Southern District of Mississippi and elsewhere, the defendant, **REBECCA IVISON**, aided and abetted by others known and unknown to the Grand Jury, did knowingly, and with intent to defraud, conceal, remove, dispose of, and convert to her own use property, that is money, income, revenue and profits in excess of $1,000 which had been mortgaged and pledged to the Secretary of Agriculture acting through the United States Department of Agriculture, Rural Development Administration, formerly, the Farmers Home Administration.

All in violation of Title 18, United States Code, Sections 658 and 2.

## COUNT 8

50. The allegations contained in paragraphs 1 through 49 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

51. On or about January 31, 2018, in Hinds County, in the Northern Division of the Southern District of Mississippi and elsewhere, the defendant, **REBECCA IVISON**, aided and abetted by others known and unknown to the Grand Jury, did willfully and knowingly make a false writing and document, to wit: an Identity of Interest Qualification Certificate for Hancock Properties, LP, knowing the same to contain a materially false, fictitious, and fraudulent statement and entry in a matter within the jurisdiction of the United States Department of Agriculture, an agency within the executive branch of the Government of the United States. **REBECCA IVISON** certified that only the individuals and companies listed on Form RD 3560-31 have an identity of interest with the Agent, **REBECCA IVISON**. The statements and representations were false because, as **REBECCA IVISON** then and there knew, she did not disclose an Identity of Interest relationship with her company, Wicker Garden Designs, LLC, to the United States Department of Agriculture.

All in violation of Title 18, United States Code, Sections 1001(a)(3) and 2.

### **NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE**

As a result of committing the offenses as alleged in this Indictment, the defendant shall forfeit to the United States all property involved in or traceable to property involved in the offenses, including but not limited to all proceeds obtained directly or indirectly from the offenses, and all property used to facilitate the offenses. Further, if any property described above, as a result of any act or omission of the defendant: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property, which cannot be divided without difficulty, then it is the intent of the United States to seek a judgment of forfeiture of any other property of the defendant, up to

the value of the property described in this notice or any bill of particulars supporting it.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1); Title 31, United States Code, Section 5317(c)(1); Title 28, United States Code, Section 2461(c); and Title 21, United States Code, Section 853(p).

_____
PATRICK A. LEMON
Acting United States Attorney

A TRUE BILL:
S/SIGNATURE REDACTED
Foreperson of the Grand Jury

This indictment was returned in open court by the foreperson or deputy foreperson of the grand jury on this the ___ day of September 2025.

_____
UNITED STATES MAGISTRATE JUDGE

14